Filed 5/11/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078846 |
| v. | (Super.Ct.No. FVI18001733) |
| ALEX JOSEPH ALEXANDER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kawika Smith, Judge.  Affirmed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance W. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Junichi P. Semitsu, and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

Alex Joseph Alexander challenges the constitutionality of laws prohibiting felons from possessing firearms and ammunition under the Second Amendment in light of the United States Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen* (2022) 597 U.S. __ [142 S.Ct. 2111] (*Bruen*). Applying the new analytical framework set forth in *Bruen* for assessing Second Amendment challenges, we conclude that the laws are facially valid. We accordingly affirm the judgment.

## BACKGROUND

In 2021, a jury convicted Alexander of being a felon in possession of a firearm and ammunition. (Pen. Code, § 29800, subd. (a)(1) (§ 29800(a)(1)); Pen. Code, § 30305, subd. (a)(1) (§ 30305(a)(1)); unlabeled statutory references are to this code.) Alexander admitted before trial that he was convicted in 2006 of attempted murder. The jury was told that he stipulated to having been previously convicted of a felony. In a bifurcated trial, the trial court found that Alexander had suffered one prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) The court sentenced Alexander to two years and eight months in state prison.

## DISCUSSION

Alexander argues that section 29800(a)(1) and section 30305(a)(1) are facially invalid under the Second Amendment because they violate his "Second Amendment right to bear arms in self-defense under the new standard of review in *Bruen*," *supra*, 142 S.Ct. 2111. We are not persuaded.

A. *Standard of Review*

In analyzing a facial challenge to the constitutionality of a statute, we consider "only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) "On a facial challenge, we will not invalidate a statute unless it 'pose[s] a present total and fatal conflict with applicable constitutional prohibitions.'" (*California School Boards Assn. v. State of California* (2019) 8 Cal.5th 713, 723-724.) Facial challenges may be raised for the first time on appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889.)

"The interpretation of a statute and the determination of its constitutionality are questions of law. In such cases, appellate courts apply a de novo standard of review." (*People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 445.)

B. *The Second Amendment*

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (U.S. Const., 2d Amend.)

In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the United States Supreme Court struck down laws in the District of Columbia (the District) that banned the possession of operable handguns inside the home. (*Id.* at p. 635.) The Court held that the Second Amendment confers "an individual right to keep and bear arms" (*Heller*, *supra*, at p. 595) for the "core lawful purpose of self-defense" (*id.* at p. 630), which the Court identified as being "central to the Second Amendment right" (*id.* at p. 628). The

3

Court concluded that the District's ban on possessing operable weapons in the home violated the Second Amendment's guarantee of "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." (*Heller*, at p. 635.) Accordingly, the Court further concluded that "[a]ssuming that [the plaintiff] is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." (*Ibid.*)

*Heller* explained, however, that "the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Heller*, *supra*, 554 U.S. at p. 626.) The Court cautioned that "nothing" in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (*Id.* at pp. 626-627.) The Court also noted that its list of "presumptively lawful regulatory measures" was merely illustrative, not exhaustive. (*Id.* at p. 627, fn. 26.)

Two years later, in *McDonald v. City of Chicago, Ill.* (2010) 561 U.S. 742 (*McDonald*), the Court held that the Second Amendment "right to keep and bear arms for the purpose of self-defense" (*McDonald*, *supra*, at p. 789) applies to the states through the Fourteenth Amendment (*McDonald*, at p. 791). The Court struck down state laws similar to the ones it struck down in *Heller*. (*McDonald*, at p. 750.)

Following *Heller*, lower courts applied a two-step test for analyzing Second Amendment challenges. (*Bruen*, *supra*, 142 S.Ct. at pp. 2125-2126.) In *People v. Gonzalez* (2022) 75 Cal.App.5th 907, we applied that test (*id.* at pp. 912-914) and rejected the defendant's Second Amendment challenge to Health and Safety Code section 11370.1 (*Gonzalez*, *supra*, at p. 915), which criminalizes being "armed with a loaded, operable firearm" while in possession of specified controlled substances (Health & Saf. Code, § 11370.1, subd. (a)). As we explained, courts applying the post-*Heller* test first asked "'whether the challenged law burden[ed] conduct that [fell] within the scope of the Second Amendment's guarantee' of protecting the right of responsible, law-abiding citizens to possess firearms to protect their home." (*Gonzalez*, at p. 912.) If the law did not impose such a burden, then the inquiry ended. (*Ibid.*) But if the law "infringe[d] on a law-abiding citizen's right to possess firearms to protect their home, then the court [was required to] inquire into 'the strength of the government's justification' for the law by balancing—under the appropriate level of scrutiny—the statute's objectives against the means it employ[ed] to accomplish those ends." (*Ibid.*)

In *Bruen*, the United States Supreme Court rejected that analytical framework, concluding that the test was "one step too many" and that *Heller* did not support application of the second step's means-end inquiry. (*Bruen*, *supra*, 142 S.Ct. at p. 2127.) In rejecting that approach, the Court noted that "[t]he Second Amendment 'is the very *product* of an interest balancing by the people' and it 'surely elevates above all other

5

interests the right of law-abiding, responsible citizens to use arms' for self-defense." (*Id.* at p. 2131.)

Bruen held that the test for assessing constitutionality under the Second Amendment is as follows:  "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" (*Bruen*, *supra*, 142 S.Ct. at pp. 2129-2130.)  *Bruen* further explained that in assessing whether a modern firearm regulation has a "relevantly similar" historical analogue (*id.* at p. 2132), courts should consider "at least two metrics:  how and why the regulations burden a law-abiding citizen's right to armed self-defense" (*id.* at p. 2133).

Applying that test, *Bruen* concluded that New York's concealed carry licensing regime, which required applicants to demonstrate proper cause to get a license, was unconstitutional "in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."  (*Bruen*, *supra*, 142 S.Ct. at p. 2156; *id.* at pp. 2122, 2134, 2150.)  The Court held "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside of the home."  (*Id.* at p. 2122.)  The Court indicated that *Bruen* was "consistent with *Heller* and *McDonald*," which had "recognized that the Second and Fourteenth Amendments

6

protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." (*Ibid.*)

*Bruen* contrasted New York's permissive "'may issue'" concealed carry licensing regime (*Bruen*, *supra*,142 S.Ct. at p. 2124) with "'shall issue' jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability" (*id.* at p. 2123). The Court noted that "nothing" in its "analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].'" (*Id.* at p. 2138, fn. 9.) *Bruen* reasoned: "Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry. [(*Heller*, *supra*, 554 U.S. at p. 635.)] Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' [(*Ibid.*)]." (*Ibid.*) The Court did "not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." (*Ibid.*)

C. *Section 29800(a)(1) and Section 30305(a)(1) Are Facially Valid Under the Second Amendment*

Alexander argues that under *Bruen* the prohibitions against felons possessing firearms and ammunition in section 29800(a)(1) and section 30305(a)(1) violate the Second Amendment right to possess firearms for self-defense.  We disagree.

Section 29800(a)(1) provides:  "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."

Section 30305(a)(1) provides:  "No person prohibited from owning or possessing a firearm under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, shall own, possess, or have under custody or control, any ammunition or reloaded ammunition."

We first analyze whether the challenged conduct—prohibiting felons from possessing firearms (§ 29800(a)(1)) and ammunition (§ 30305(a)(1))—is covered by the Second Amendment.  (*Bruen*, *supra*, 142 S.Ct. at pp. 2129-2130.)  We conclude that it is not, because according to *Heller* and *Bruen* only law-abiding citizens are included among

8

"the people" whose right to bear arms is protected by the Second Amendment. (U.S. Const., 2d Amend; *Heller*, *supra*, 554 U.S. at p. 635; *Bruen*, at p. 2131.)

*Heller* defined the right conferred by the Second Amendment as "the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home." (*Heller*, *supra*, 554 U.S. at p. 635, italics added; *id.* at p. 625.) A felon is "[s]omeone who has been convicted of a felony." (Black's Law Dict. (11th ed. 2019).) In California, a felony is defined as "a crime that is punishable with death, by imprisonment in the state prison," or incarceration in the county jail under specified circumstances. (§ 17, subd. (a).) A felon, by definition, is therefore someone who has committed a crime and as such is not law-abiding. Felons accordingly are not included among the class of people afforded rights under the Second Amendment.

Consistent with that understanding of the Second Amendment, *Heller* acknowledged that there are people who *do not qualify* to exercise rights under the Second Amendment—*Heller* directed the District to allow the petitioner to register his handgun and to give him a license to carry it at home only if the petitioner was "not disqualified from the exercise of Second Amendment rights." (*Heller*, *supra*, 554 U.S. at p. 635.) Moreover, *Heller* recognized that nothing in the opinion cast doubt on the "longstanding prohibitions on the possession of firearms by felons." (*Id.* at p. 626.)

*Bruen* did not alter *Heller*'s description of the people who are afforded Second Amendment rights. *Bruen* instead reaffirmed that the Second Amendment right "'to use arms' for self-defense" belongs to "'law-abiding, responsible citizens.'" (*Bruen*, *supra*,

9

142 S.Ct. at p. 2131; see also *id.* at pp. 2138, fn. 9, 2156.) The Court concluded that New York's permissive concealed carry licensing regime was unconstitutional because "it prevent[ed] *law-abiding citizens with ordinary self-defense needs* from exercising their right to keep and bear arms." (*Id.* at p. 2156, italics added.) Moreover, in setting forth the proper framework to assess constitutionality under the Second Amendment, the Court explained that courts should analyze how and why historically relevant regulations "burden *a law-abiding citizen's right to armed self-defense*." (*Bruen*, at p. 2133, italics added.) And *Bruen* described *Heller* and *McDonald* as "recogniz[ing] that the Second and Fourteenth Amendments protect the right of *an ordinary, law-abiding citizen* to possess a handgun in the home for self-defense." (*Bruen*, at p. 2122, italics added.)

The Court further affirmed that only law-abiding people are afforded Second Amendment rights when it reasoned that nothing in *Bruen* suggested that "'shall issue'" licensing regimes are unconstitutional, because such regimes "do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." (*Bruen*, *supra*, 142 S.Ct. at p. 2138, fn. 9.) *Bruen* explained that requiring an applicant "to undergo a background check" is "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" (*Ibid.*) The primary purpose of performing a background check in this context would be to determine the applicant's criminal history.[1] Thus, according to this analysis, requiring

---

[1] *Bruen* noted that constitutional issues could arise in "'shall issue'" licensing regimes, but the Court did not include background check requirements among the conceivable constitutional issues. (*Bruen*, *supra*, 142 S.Ct. at p. 2138, fn. 9.)

applicants to undergo background checks before giving them licenses to carry firearms in public is presumptively valid under *Heller* and *Bruen* precisely because it prohibits only those who are not "'law-abiding, responsible citizens'" from obtaining licenses. (*Bruen*, at p. 2138, fn. 9.) Such a requirement thus does not burden the Second Amendment rights of anyone who actually has such rights, namely, those who are law-abiding. (*Bruen*, at p. 2138, fn. 9.)

In sum, *Heller* and *Bruen* both held that the Second Amendment protects the individual right of "'law-abiding, responsible citizens'" to possess firearms. (*Bruen*, *supra*, 142 S.Ct. at p. 2131; *Heller*, *supra*, 554 U.S. at p. 635.) Convicted felons, by definition, are not law-abiding. Felons thus are not among "the people" who have an individual right to possess firearms under the Second Amendment. (U.S. Const., 2d Amend.) We consequently conclude that Alexander's challenges to the constitutionality of section 29800(a)(1) and section 30305(a)(1) under the Second Amendment fail under the first step of *Bruen*'s analytical framework.

Alexander's arguments to the contrary are unavailing. Alexander first argues that *Heller*'s statement that felon dispossession laws are presumptively valid is dicta that cannot be "harmonized with *Heller*'s core holding and the policies underlying the Second Amendment." (See *Heller*, *supra*, 554 U.S. at pp. 626-627.) We agree that *Heller*'s list of regulations that the Court considered presumptively valid was dicta—it was not necessary to the Court's decision and therefore is not binding. (*Childers v. Childers* (1946) 74 Cal.App.2d 56, 61-62.) But we disagree with the remainder of Alexander's

11

argument. *Heller* defined the right protected by the Second Amendment as belonging to "law-abiding, responsible citizens" (*Heller*, at p. 635), and *Bruen* reaffirmed that limitation (*Bruen*, *supra*, 142 S.Ct. at pp. 2122, 2131, 2133, 2156). *Heller*'s dicta about the presumed validity of laws prohibiting felons from possessing firearms is consistent with the Court's explanation of the scope of Second Amendment rights.

Relying on a passage in *Heller*, Alexander contends that the text of the Second Amendment is not limited to those who are law-abiding and instead confers rights on "'all members of the political community.'" We disagree with Alexander's interpretation of *Heller*. In concluding that the Second Amendment protects an individual right, rather than a right belonging only to organized militias, the Court stated that there is "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." (*Heller*, *supra*, 554 U.S. at p. 581.) But in further explaining the scope of the individual right, the Court repeatedly described the right as belonging to "law-abiding citizens." (*Id.* at p. 625; see also *id.* at p. 635.) We cannot ignore the Court's guidance.

We also reject Alexander's contention that law-abiding citizens include "law-abiding ex-felons." The argument is foreclosed by *Bruen*. *Bruen* reasoned that laws requiring concealed carry applicants to undergo background checks do not violate the right to bear arms for self-defense in public, because such a requirement ensures that "those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" (*Bruen*, *supra*, 142 S.Ct. at p. 2138, fn. 9.) A background check seeks to determine

12

whether a person has been convicted of a crime *in the past*, not whether the person is presently committing additional crimes. *Bruen* described a background check requirement as ensuring that only those who are law-abiding are allowed to bear arms. (*Ibid.*) It follows that the Second Amendment right afforded to law-abiding citizens does not extend to convicted felons who are presently refraining from committing additional crimes.

We conclude that section 29800(a)(1) and section 30305(a)(1) are facially valid because the possession of firearms and ammunition by convicted felons is not conduct covered by the Second Amendment.

DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

MENETREZ _____<br>J.

We concur:

McKINSTER _____<br>Acting P. J.<br>MILLER _____<br>J.

13